IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRENDA E. PARSONS,**

        **Plaintiff,**

v.                                        Civil Action 2:20-cv-2594
                                              Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Brenda E. Parsons, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties in this matter have consented to jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 6, 7). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff previously filed applications for DIB and SSI on December 19, 2012, alleging that she became disabled on October 25, 2012. On April 23, 2015, both applications were denied in a determination issued by Administrative Law Judge David R. Bruce ("ALJ Bruce"). (Tr. 67–86.) The Appeals Council declined to review ALJ Bruce's determination, and Plaintiff apparently did not seek judicial review. (Tr. 153–59).

Plaintiff filed her current applications for DIB and SSI on April 3, and April 20, 2017. She initially alleged that she became disabled on October 25, 2012, but later amended her alleged onset date to April 24, 2015—the day after ALJ Bruce's unfavorable determination was issued. (Tr. 40).

Plaintiff's current applications were denied initially and on reconsideration and a hearing was held on February 21, 2019, before Administrative Law Judge Julianne Hostovich ("ALJ Hostovich") who issued an unfavorable determination on March 21, 2019. (Tr. 36–66, 12–35). The Appeals Council denied Plaintiff's request to review that determination, which consequently became final. (Tr. 1–6).

On May 22, 2020, Plaintiff initiated this action seeking judicial review of that final determination. (Doc. 1.) The Commissioner filed the administrative record on October 13, 2020 (Doc. 12); Plaintiff filed her Statement of Errors on November 27, 2020 (Doc. 13); and Defendant filed an Opposition on January 11, 2021 (Doc. 14). Plaintiff did not file a Reply. The matter is ripe for consideration.

### A.     Relevant Hearing Testimony

ALJ Hostovich summarized the testimony from Plaintiff's hearing:

> At the hearing, [Plaintiff] testified that she last worked in 2013 and she reported that she worked as cashier, stocker, and assistant manager for two employers; and, she noted that she lifted up to 50 to 60 pounds in the position. [Plaintiff] reported that she has past work as a cook at a nursing home in 2005 and she was lifting up to 20 pounds and standing most of the time. Regarding her impairments, the [Plaintiff] maintained she has difficulty raising her arms above shoulder level. [Plaintiff] noted difficulty focusing and remembering due to depression, but she is able to drive without getting lost. She indicated that she received outpatient mental health treatment and she has been prescribed psychotropic medications for depression and dealing with stress. [Plaintiff] testified that she sees and hears people that are not there and she experiences these episodes three or four times a week. She stated that the medications have reduced her symptoms, but her symptoms have not resolved completely. [Plaintiff] reported anger issues and sleep difficulties. Physically, [Plaintiff] stated that she experiences migraine headaches once every two months and she takes prescribed medication to relieve the condition. She testified that she has pain in her lower back, rated on a scale of one to ten, as eight and one-half. [Plaintiff] indicated that she receives pain management treatment including medications; and, she noted that the weather changes aggravate her symptoms. She indicated that she received physical therapy but it did not help. [Plaintiff] reported neck and shoulder pain due to bulging in her neck and swollen lymph nodes in her neck. [Plaintiff] testified that she has bilateral carpal tunnel

> syndrome that causing her to drop objects and buttoning buttons. She stated that she has not had carpal tunnel surgery due to her insurance.
>
> She reported that she experiences shortness of breath with walking and she uses an inhaler to treat her breathing condition. She testified that she stopped smoking in June 2018. Regarding her heart issues, she stated that she experienced "passing out" episodes and she was hospitalized and had a Loop monitor implanted. She indicated that she was prescribed medication, but it was discontinued because it lowered blood pressure too much. She stated that she has diabetes mellitus and takes insulin and oral medications, but it is still not fully controlled. [Plaintiff] indicated that she has issues with her feet related to her diabetes mellitus such as dry skin and ingrown toenails, as well as numbness. As for her daily activities, she testified that she loads the dishwasher, does laundry, and shops for groceries. [Plaintiff] indicated that she is able to sit for one hour before changing positions, stand for 15 minutes before resting, walking for one-half block, and can lift no more than a gallon of milk. [Plaintiff] testified that she had knee surgery, but it is improved. As for her Hodgkin's lymphoma, she stated that it is in remission, but she has no immune system and she gets sick easily.

(Tr. 22).

  **B.**  **Relevant Medical Evidence**

ALJ Hostovich also summarized the medical records:

> As for [Plaintiff]'s obesity, the evidence shows [Plaintiff]'s height is 5' 10" and her weight ranges from 232.6 pounds with a body mass index (BMI) of 33.3 (Exhibit B-8F, page 1) to 274.4 pounds with a BMI of 39.4, consistent with obesity (Exhibit B-31F, page 18). The evidence from August 2015 shows that weight reduction was discussed with [Plaintiff] in order to take significant amount of stress off of her back (Exhibit B-4F, page 89). The evidence from May 2017 shows [Plaintiff] was receiving physical therapy and it is helpful in reducing her pain and improving her mobility (Exhibit B-17F, page 87). Hospital records from November 2015 show [Plaintiff] received injection in her lumbar spine (Exhibit B-18F, pages 101 and 102).
>
> Regarding the degenerative disc disease, hospital records from January 8, 2013, show [Plaintiff] underwent right L5/Sl lumbar decompression and discectomy (Exhibit B-2F, pages 13 and 14). On February 6, 2013, she presented to the hospital for an elective "re-do" of the L5/S1 [discectomy] due to herniation (Exhibit B-3 F). On a follow-up visit in January 2014 (prior to the amended alleged onset date), the evidence shows [Plaintiff]'s symptoms had improved (Exhibit B-4F, page 9). In June 2015, the medical evidence shows [Plaintiff] had a lumbar microdiscectomy a few years ago and she responded well (Exhibit B-4F, page 30).

The objective evidence includes an MRI of the lumbar spine from June 2015 that shows L5 transitional vertebra with S1/S2, L5/S1 right laminectomy and discectomy, with residual disc bulge contact with right S1 nerve root, L4/5 broad based disc bulge with some contact, and facet arthrosis (Exhibit B-4F, page 89). The evidence shows the lumbar recurrent disc bulge is not so significant to consider surgical intervention (Exhibit B-4F, page 89). Examination findings showed tenderness and decreased range of motion in the lumbar spine, but straight leg raising was negative, strength was normal in the bilateral upper extremities, and sensation was intact (Exhibit B-8F). The evidence shows normal gait with no assistive device (Exhibits B-8F, page 178, B-11F, page 95, and B-15F, page 13). Overall, the degree of limitations alleged by [Plaintiff] is inconsistent with the evidence of record. For instance, [Plaintiff] alleges difficulty with prolonged sitting, walking and standing, but the evidence shows her daily activities include riding horses (Exhibits B-7F, B-8F, and B-13F), traveling to Columbus (Exhibit B-8F), and providing care for her horses, dogs, and cat (Exhibit B-23F). Additionally, the evidence shows [Plaintiff] performs gardening and canning vegetables (Exhibits B-8F and B-11F), cleaning and cooking (Exhibit B-11F), and mowing the yard with a tractor (Exhibit B-18F). The evidence establishes the degenerative disc disease is accommodated by limiting her to less than the full range of light work, as described above.

Regarding the diabetes mellitus, the evidence includes a diagnosis of diabetes mellitus since 2012 treated with medications and insulin (Exhibits B-5F, B-8F, B-10F, and B-11F). Podiatry records indicate [Plaintiff] was prescribed diabetic shoes and insoles, but she did not pick them up due to insurance issues (Exhibit B-6F). The evidence from August 2017 shows [Plaintiff]'s diabetes mellitus is controlled (Exhibit B-24F, page 4). The medical records from September and October 2018 indicate [Plaintiff] was "not taking care of her diabetes mellitus" and she stopped taking Metformin due to uncontrolled diarrhea and her medication was changed (Exhibit B-30F). Overall, the degree of limitations alleged by [Plaintiff] is inconsistent with the other evidence of record, including the performance of various activities by [Plaintiff] as previously discussed above. The evidence establishes the diabetes mellitus is accommodated by limiting her to less than the full range of light work, as described above.

Mentally, the mental health intake from August 2016 includes a diagnosis of major depressive disorder, moderate, with anxious distress (Exhibit B-8F, pages 115 and 116). On October 2016, the mental status examination shows irritable mood, direct eye contact, and fair insight and judgment (Exhibit B-20F). Medical records from January 2017 include a diagnosis of anxiety and depression (Exhibit B-11F). Mental health records show [Plaintiff] presented with complaints of depression, anxiety, temper, crying, agitation, trouble focusing, and nightmares. [Plaintiff] was diagnosed with PTSD, anxiety, and bipolar disorder. She was prescribed psychotropic medications including Prozac and Depakote. On a follow-up visit in March 2017, [Plaintiff] reported improved mood, decreased anger and aggression, and improved sleep with Ambien. She indicated that her energy level and

4

motivation are better (Exhibit B-15F). Mental status examination findings show eye contact was average, affect was full, and mood was euthymic (Exhibit B-15F, page 12). Mental health records from January 2018 show [Plaintiff] was doing well on the current medication regimen (Exhibit B-23F, page 17). However, in September 2018, she presented with reports of hearing voices "at times" (Exhibit B-23F, page 31). Medical health records from August 2018 includes a mental status examination with essentially normal findings; and, [Plaintiff] reported that her only concern is regarding some small varicosities in her legs that do not cause her pain or discomfort (Exhibit B-27F). Overall, the degree of limitations alleged by [Plaintiff] are inconsistent with the other evidence. As noted previously, [Plaintiff]'s reported daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The evidence establishes the depression, bipolar disorder, anxiety, and PTSD are accommodated by limiting her to routine tasks involving simple work related decisions with the ability to adapt to routine workplace changes, with no production quota production, as described above.

[Plaintiff] did undergo surgery for the alleged impairment, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in [Plaintiff]'s favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. As noted in the record, [Plaintiff] underwent lumbar surgery in January 2013, with revision surgery done in February 2013 (Exhibits B-2F and B-3F), with noted improvement of symptoms (Exhibit B-4F, page 4).

The record reveals that [Plaintiff] failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. [Plaintiff] was strongly advised to stop smoking in October 2014 (Exhibit B-7F, page 5), but she testified at the hearing that she continued to smoke until June 2018. In addition, [Plaintiff] was prescribed diabetic shoes and insoles, but she did not pick them up due to insurance issues (Exhibit B-24F). Medical records show weight reduction (below 200 pounds) was recommended to [Plaintiff] to relieve stress on her back (Exhibit B-4F, page 89).

[Plaintiff] has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [Plaintiff]'s favor, but the medical records reveal that the medications have been relatively effective in controlling [Plaintiff]'s symptoms. Psychotropic medications such as Prozac and Depakote were prescribed to reduce [Plaintiff]'s psychological symptoms and the record shows she was doing well with the current medication regimen (Exhibits B-15F and B-23F).

(Tr. 22–24).

C. ALJ Hostovich's Decision

In her March 21, 2019, determination, ALJ Hostovich explained that because there had

5

been a final decision on Plaintiff's prior disability applications, she would be bound by the findings in that final decision for the unadjudicated period that began after it had been issued by ALJ Bruce unless there was new and material evidence relating to the prior findings, or a change in the relevant law, regulations, or rulings. (Tr. 24–25). ALJ Hostovich found, however, new and material evidence, and thus that she was not so bound. (*Id.*)

ALJ Hostovich also found that Plaintiff had met the insured status requirement through December 31, 2017, and that she had not engaged in substantial gainful activity since April 24, 2015, her amended alleged onset date. (Tr. 18). ALJ Hostovich further found that Plaintiff suffered from the following severe impairments: degenerative disc disease, obesity, diabetes mellitus, bipolar, depression, anxiety, and post-traumatic stress disorder (PTSD). (*Id.*). Yet, ALJ Hostovich concluded that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 19).

ALJ Hostovich assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can tolerate frequent exposure to extreme cold, extreme heat, fumes, odors, gases, dust, and poor ventilation. She can understand, remember, and carry out routine tasks involving simple work related decisions with the ability to adapt to routine workplace changes. She needs a work environment that does not impose a strict production rate pace, that is, no production quotas.

(Tr. 21). ALJ Hostovich then relied on testimony from a vocational expert ("VE") to determine that Plaintiff was able to perform her past relevant work as a cook helper. (Tr. 26). In addition, ALJ Hostovich determined that Plaintiff was capable of performing other jobs that existed in significant numbers in the national economy such as product laborer, router, and garment folder. (Tr. 26–27). ALJ Hostovich therefore concluded that Plaintiff was not disabled under the Social

Security Act (the "Act"), since April 24, 2015. (Tr. 27).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x. 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff challenges ALJ Hostovich's determination that she could perform light work with restrictions. (Doc. 13 at 5–8). Plaintiff next alleges that ALJ Hostovich erred because in assessing Plaintiff's RFC did not "adequately and fully convey [Plaintiff's] limitations" in concentration, persistence, and pace to the VE. (*Id*. at 11). Finally, Plaintiff contends that ALJ Hostovich's analysis of the opinions from the state agency reviewing physicians and psychologists was

7

improper. (*Id.* at 12–13). The Court addresses Plaintiff's allegations of error in turn, although not in the order that she has raised them, and finds that they lack merit.

### A. Light Work Determination

Plaintiff alleges that ALJ Hostovich erred when determining that she was capable of performing light work with restrictions. (*Id*. at 5–8). Specifically, Plaintiff alleges that when her prior applications were determined, ALJ Bruce found that she was capable of sedentary work with restrictions. (*Id*.). Plaintiff contends that ALJ Hostovich was therefore required to find that she was capable of sedentary work with restrictions pursuant to the *res judicata* principles set forth by the Sixth Circuit in *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997). (*Id*.).

The Court finds that this contention lacks merit. In *Drummond*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d at 842. In that case, claimant's initial claim for SSI was denied when an ALJ found that she was capable of sedentary work. *Id*. at 838. When the claimant later re-filed her disability claim, a second ALJ found that she was capable of medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim. *Id*. at 839. After explaining that "*[r]es judicata* applies in an administrative law context following a trial type hearing," the Sixth Circuit held that the second ALJ was bound by the sedentary RFC determination of the first ALJ because there was no new or additional evidence of an improvement in the claimant's condition. *Id*. at 841–842. The Sixth Circuit reasoned that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id*.

The Social Security Administration subsequently issued an Acquiescence Ruling explaining how the ruling in *Drummond* would be applied to claims in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act*, 1998 WL 283902, at *3 (June 1, 1998).

The Sixth Circuit also subsequently clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. June 27, 2018), by reiterating that *res judicata* applies to administrative proceedings. The *Earley* Court explained that when a claimant files a later application covering the same period as an earlier application, *res judicata* applies absent good cause to revisit the earlier determination. *Id*. at 933. But the *Earley* Court explained that *res judicata* does not apply when a claimant files a subsequent application seeking benefits for a different period. Instead, "[w]hen an individual seeks disability benefits or a distinct period of time, each application is entitled to review." *Id*. The *Earley* Court cautioned, however, that "fresh review is not blind review." *Id*. at 934. Although an ALJ evaluating a subsequent application is not bound to follow a previous determination, the ALJ may "nevertheless consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id*. Accordingly, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id*. at 933.

Here, the parties do not address whether Plaintiff's current applications cover the same period as Plaintiff's prior applications. The Court, however, notes that on April 23, 2015, ALJ Bruce issued a determination on Plaintiff's earlier applications finding that she was not disabled

9

under the Act from October 25, 2012, through the date of that decision. (Tr. 80). Plaintiff filed her current applications in April of 2017, and has since alleged an onset date of April 24, 2015—the day after ALJ Bruce's determination was issued. (Tr. 40). Accordingly, the Court concludes that Plaintiff's current applications cover a different period than her earlier applications. Under *Earley*, that means that the ALJ Bruce's findings were entitled to "legitimate, albeit not binding consideration" by ALJ Hostovich. *Earley*, 893 F.3d at 933.

> In her decision, ALJ Hostovich addressed the effect of ALJ Bruce's RFC determinations:
>
> . . . David Bruce, an Administrative Law Judge, issued an unfavorable hearing decision on April 23, 2015. Judge Bruce concluded that the claimant had the residual functional capacity to perform sedentary exertion, except she can never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She is limited to understanding, remembering, and carrying out simple to moderately complex tasks (defined as SVP 1 to SVP 4 type jobs), but not production rate pace jobs (Exhibit B-1A). On initial review and reconsideration, the state agency adopted the residual functional capacity finding of the Administrative Law Judge (Exhibits B-2A, B-3A, B-6A and B-7 A). The prior finding concerning the claimant's residual functional capacity is binding absent evidence of an improvement or change in condition since the prior hearing. Consistent with the provisions of *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997); and Social Security Acquiescence Rulings 98-3(6) and 98-4(6), the undersigned must adopt disability findings (including findings of residual functional capacity) from the final decision by an Administrative Law Judge or the Appeals Council on the prior claim, absent new and material evidence relating to the finding, a change in the law, regulations, or rulings.

(Tr. 24–25). Notably, ALJ Hostovich failed to mention *Earley* even though it is applicable here. Nevertheless, ALJ Hostovich followed the precepts in *Early* by finding that new evidence undermined ALJ Bruce's RFC assessment. ALJ Hostovich wrote:

> After considering all the evidence of record, including the new evidence of record, the undersigned concludes that the residual functional capacity established in the prior decision is not entirely consistent with the evidence of record in this case; therefore, these opinions are entitled to only some weight. The evidence indicates the claimant underwent lumbar spine surgeries (Exhibits B-2F, pages 13 and 14 and B-3F), but since that time, her physical examinations have been unremarkable

>   (Exhibit B-4F, B-11F, B-17F, page 39, and B-28F). Moreover, the evidence shows the claimant's Hodgkin's lymphoma has been in remission for years (Exhibit B-27F). Additionally, the evidence shows the claimant's reported daily activities show increased functioning, such as riding horses (Exhibits B-7F, page 29, B-8F, page 191, and B-13F, page 26), traveling to Columbus to visit her ill brother (Exhibit B-8F, page 18), caring for her pets (horses, dogs, and a cat) (Exhibit B-23F, page 16), gardening and canning vegetables (Exhibits B-8F, page 11 and B-17F, page 94), cleaning and cooking (Exhibit B-11F, page 38), and mowing the yard with a tractor (Exhibit B-18F, pages 176 and 182). Nonetheless, the undersigned has partially adopted the mental residual functional capacity opinions and has limited the claimant to unskilled work with no production quotas. Therefore, the undersigned does not adopt the prior Administrative Law Judge's residual functional capacity, which was issued at a time shortly after the claimant's revision surgery, and gives it only some weight for the reasons discussed above. For the same reasons, the undersigned only gives some weight to the opinions at Exhibits B-2A, B-3A, B6A, and B-7A.

(Tr. 25). ALJ Hostovich's analysis thus tracks the *Earley* Court's reasoning—that an ALJ's prior findings constitute a legitimate consideration in the absence of new evidence.

Substantial evidence supports ALJ Hostovich's determination that new evidence undermined ALJ Bruce's April 23, 2015, RFC determination. As ALJ Hostovich explained, Plaintiff had lumbar spine surgery in 2013, but later examinations, which took place after ALJ Bruce's RFC determination was issued, were often unremarkable. For example, during examinations in June and August of 2016, Plaintiff had moderate tenderness to palpitation in the cervical and lumbar spine but she had 5/5 muscle strength in her upper and lower extremities. (Tr. 781, 767). An examination in January of 2017, revealed that Plaintiff had diffuse tenderness to palpitation in her cervical and lumbar spine and pain with range of motion, but she had negative straight leg tests and 5/5 strength in the upper and lower extremities. (Tr. 1604). At numerous appointments in 2017 and 2018, Plaintiff denied body aches, and examinations revealed that she was comfortable and in no acute distress. (Tr. 2087–88, 2093–94, 2100–01, 2107, 2113, 2132, 2149, 2154). The results of diagnostic tests done after ALJ Bruce's RFC determination were also unremarkable. Lumbar spine films and cervical and thoracic x-rays in June of 2015 did not reveal

11

any significant abnormalities or obvious instabilities. (Tr. 473, 477). An MRI of Plaintiff's lumbar spine in June of 2015 revealed a broad-based recurrent disc bulge, but it was not so significant as to warrant operative intervention. (Tr. 529). An MRI of Plaintiff's cervical spine in June of 2015 showed only mild degenerative changes with no central or foraminal stenosis at any level in her cervical spine and no fractures or spondylolisthesis. (Tr. 542, 537). An X-ray of Plaintiff's lumbar spine was nonacute in October of 2015. (Tr. 552). And, as noted by ALJ Hostovich, the record contains evidence that Plaintiff's cancer had been in remission for years. (Tr. 943, 761, 769).

As ALJ Hostovich also explained, the record contained new evidence of Plaintiff's activities that demonstrated improved functioning. (*See e.g.,* Tr. 594, 947, 1321 (Plaintiff went horseback riding in the fall 2015); Tr. 1091 (Plaintiff reported she was doing "all the work, cleaning, cooking . . . ." in June 2016); Tr. 774 (Plaintiff travelled to see her ill brother in July 2016); Tr. 766 (Plaintiff reported she worked in the garden, picking and canning vegetables in August 2016); Tr. 1659 (Plaintiff again indicated she was gardening in July 2017); Tr. 1843, 1849 (Plaintiff reported that she was mowing the lawn in August 2017); Tr. 2178 (Plaintiff reported she took care of her pets including horses, dogs, and a cat in March 2018)). In sum, ALJ Hostovich determined this new evidence showed that Plaintiff's functioning had improved. And, as illustrated above, that determination enjoyed substantial record support.

Plaintiff also contends that ALJ Hostovich summarily discounted ALJ Bruce's prior RFC determination and instead relied on "one conclusory, vague statement" from Plaintiff's treating physician, Dr. Devaki Sika, who wrote in his December 14, 2018, treatment notes that Plaintiff was "able to carry out light work." (Doc. 13 at 8–9, citing Tr. 2372). Plaintiff specifically complains that Dr. Sika's opinion was "overbroad, fails to include any specific functional limitations and is contradicted by the voluminous record supporting additional limitations." (Doc.

12

13 at 9). The Court finds that this contention lacks merit because it inaccurately describes ALJ Hostovich's analysis which included a lengthy discussion about the weight that was assigned to ALJ Bruce's RFC determination and the evidence that supported that weighting determination. (Tr. 24–25). In short, ALJ Hostovich did not exclusively rely on Dr. Sika's opinion to assess Plaintiff's RFC. Instead, ALJ Hostovich properly considered and weighed all medical opinions, including a statement from Plaintiff's treating source that she was able to do light work. *See* 20 C.F.R. §416.927(b).

Plaintiff additionally contends that ALJ Hostovich erred when finding that she could perform light work instead of sedentary work because her impairments limited her ability to walk and stand, and that walking and standing requirements constitute the primary difference between light and sedentary work. (Doc. 13 at 6). The record contains, however, numerous examinations finding that Plaintiff had no difficulty walking and that her mobility was normal. (Tr. 767, 781, 788, 795, 802, 810, 824, 830, 837, 865, 884, 891, 898, 905, 913, 927, 934, 941). Plaintiff also points to evidence in the record and alleges that it supports a finding that she is unable to perform light work. (Doc. 13 at 7). It is well settled, however, that "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Here, ALJ Hostovich's findings are supported by substantial evidence within her "zone of choice." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). For all these reasons the Court concludes that ALJ Hostovich did not err when determining that Plaintiff was capable of light work with restrictions.

> **B.** **Opinions from the State Agency Reviewers**

Plaintiff contends that the state agency reviewers opined that they would adopt ALJ

Bruce's RFC determination and that ALJ Hostovich committed reversible error by summarily discounting the state agency reviewers' opinions. (Doc. 13 at 8–9, 12–13). The Court finds that this claim lacks merit.

"The Social Security Administration defines three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating sources." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x. 267, 273 (6th Cir. 2015) (citing 20 C.F.R. § 404.1502). "A physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). If the treating physician's opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,' then an ALJ 'will give it controlling weight.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). And, when an ALJ does not give the treating source's opinion controlling weight, the ALJ must give "'good reasons'" for discounting the opinion. *Id.* (quoting *Rogers*, 486 F.3d at 242).

On the other hand, when the opinion comes from a non-treating or non-examining source, it is usually not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2). Rather, the ALJ should consider relevant factors, including supportability, consistency, and specialization. 20 C.F.R. § 404.1527(d)(2). There is however, no "reasons-giving requirement" for non-treating source opinions. *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x. 255, 259 (6th Cir. 2016). Rather, the ALJ must provide only "a meaningful explanation regarding the weight given to particular medical source opinions." *Mason v. Comm'r of Soc. Sec.*, No. 1:18 CV 1737, 2019 WL 4305764, at *7 (N.D. Ohio Sept. 11, 2019) (citing SSR 96-6p, 1996 WL 374180, at *2).

In this case, ALJ Hostovich provided a meaningful explanation of the weight she assigned to the opinions from the state agency reviewers. As set forth previously, ALJ Hostovich meaningfully described ALJ Bruce's RFC determination. (Tr. 24–25). ALJ Hostovich then explained that "[o]n initial review and reconsideration, the state agency adopted the residual functional capacity finding of [ALJ Bruce] (Exhibits B-2A, B-3A, B-6A and B-7 A)." (*Id.* at 25). ALJ Hostovich then explained in detail why new evidence of Plaintiff's examination results, cancer remission, and activities warranted a departure from ALJ Bruce's RFC. (*Id.*). ALJ Hostovich then explained that she partially adopted ALJ Bruce's mental residual functional capacity findings and limited Plaintiff to unskilled work with no production quotas but that she did not adopt ALJ Bruce's physical residual functional capacity findings. (*Id.*). ALJ Hostovich then indicated that for the same reasons, she only gave the opinions from the state agency reviewers some weight. (*Id.*). This was sufficient. ALJ Hostovich's reasons for determining that a departure from ALJ Bruce's RFC determination was warranted were coextensive with her reasons for discounting opinions adopting ALJ Bruce's RFC determination.

Plaintiff further asserts that ALJ Hostovich erred because she did not discuss which of the state agency reviewer's opinions were adopted. (Doc. 13 at 13). But ALJ Hostovoich was not required to do so. ALJ Hostovich considered the state agency reviewers' opinions and explained what weight she was giving those opinions. Because the state agency reviewers were non-treating sources, ALJ Hostovich was not obligated to give "good reasons" for that weight. *Parkinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-5051, 2020 WL 5875870, at *2 (S.D. Ohio Oct. 2, 2020). For these reasons, the Court finds that this allegation of error lacks merit.

15

### C. Concentration, Persistence, and Pace

Plaintiff additionally alleges that ALJ Hostovich erred because she did not adequately convey Plaintiff's limitations in concentration, persistence, and pace to the Vocational Expert ("VE"). (Doc. 13 at 11). This claim also lacks merit.

An ALJ's hypothetical question to a VE must accurately portray a claimant's physical and mental impairments. *Carelli v. Comm'r of Soc. Sec.*, 390 F. App'x. 429, 438 (6th Cir. 2010). It is, however, "well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact" in a hypothetical posed to a VE. *Id*. (citing *Casey v. Sec'y of H.H.S.,* 987 F.2d 1230, 1235 (6th Cir.1993)). A review of the hearing transcript in this case reveals that ALJ Hostovich accurately included all of her RFC findings in the hypothetical question that she posed to the VE. (*Compare* Tr. 21 *with* 62–63).

Plaintiff argues that ALJ Hostovich erred because she did not ask the VE to identify the number of jobs that "would be excluded if [Plaintiff] required repetition of directions, only visual demonstration directions, difficulty responding appropriately to work pressure or other aspects related to moderate concentration limitations . . . . " (Doc. 13 at 11). But these additional factors were irrelevant. When ALJ Hostovich asked the VE a hypothetical question that included all the limitations that ALJ Hostovich found credible, the VE testified that jobs existed. These additional limitations described by Plaintiff were not ones that ALJ Hostovich found credible. Thus, ALJ Hostovich was not required to ask the VE to consider them.

To the extent that Plaintiff alleges that ALJ Hostovich erred by finding that these additional limitations, and others such as potential time off task, were not credible, Plaintiff fails to identify record evidence indicating that any such limitations had been opined. Indeed, the state agency reviewers in this case opined that they adopted ALJ Bruce's RFC determination. Specifically, ALJ

16

Bruce determined that Plaintiff could "understand, remember, and carry out instructions for simple to moderately complex tasks defined as SVP 1 to 4 type jobs, but not production rate jobs." (Tr. 75). This determination, however, included fewer concentration, persistence, and pace restrictions than the RFC ultimately assessed by ALJ Hostovich.

For these reasons, the Court finds that ALJ Hostovich did not commit reversible error with regard to the hypothetical questions she posed to the VE.

## IV.   CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.


Date:  March 17, 2021                              /s/ Kimberly A. Jolson
                                                   KIMBERLY A. JOLSON
                                                   UNITED STATES MAGISTRATE JUDGE